IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
September 24, 2025 Session

**STATE OF TENNESSEE v. JESSIE ROSE HODGE**

**Appeal from the Criminal Court for Knox County**
**No. 122616   G. Scott Green, Judge**

_____

**No. E2024-01455-CCA-R3-CD**

_____

Defendant, Jessie Rose Hodge, appeals the Knox County Criminal Court's decision to deny judicial diversion for her guilty-pleaded conviction of criminally negligent homicide, a Class E felony. *See* Tenn. Code Ann. § 39-13-212. Following our review, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

MATTHEW J. WILSON, J., delivered the opinion of the court, in which J. ROSS DYER, and JILL BARTEE AYERS, JJ., joined.

T. Scott Jones and Baylee M. Brown, Knoxville, Tennessee, for the appellant, Jessie Rose Hodge.

Jonathan Skrmetti, Attorney General and Reporter; Johnny Cerisano and Katherine C. Redding, Assistant Attorneys General; Charme P. Allen, District Attorney General; and C. Leland Price, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Pursuant to a plea agreement, Defendant pleaded guilty to a single count of criminally negligent homicide, with the agreement that she would be sentenced to one year suspended to probation and the trial court would determine whether Defendant should be granted judicial diversion. Following a sentencing hearing, the trial court denied diversion and ordered Defendant to serve her one-year sentence on probation.

**Factual and Procedural Background**

The Knox County Grand Jury charged Defendant via a three-count indictment with vehicular homicide, *see* Tenn. Code Ann. § 39-13-213, one count of leaving the scene of an accident involving death, *see* Tenn. Code Ann. § 55-10-101, and one count of following too closely, *see* Tenn. Code Ann. § 55-8-124, related to a September 4, 2021 traffic accident that resulted in the death of Dwight Woods ("the victim"). Pursuant to a plea agreement, Defendant agreed to plead guilty in Count One to the lesser-included offense of criminally negligent homicide in exchange for a sentence of one-year on probation and dismissal of the remaining charges. The parties also agreed that Defendant could pursue judicial diversion at the trial court's discretion.

I. Guilty Plea Submission Hearing

The factual basis recited by the State at the guilty plea submission hearing provided that at approximately 3:40 a.m. on September 4, 2021, officers with the Knox County Sheriff's Office responded to a 911 call from trucker Derick Hood reporting a two-vehicle accident on I-40 Westbound just past the I-140 interchange. Upon their arrival, officers discovered a 2016 BMW "pulled against the median wall" with a motorcycle "wedged" in front of it. The victim, who had been struck by at least one vehicle, lay dead on the interstate. The driver of the BMW, which was registered to Defendant, had fled the scene. An officer familiar with Defendant managed to contact her with the assistance of her family members and discovered that "she had walked across the field there and was at Threads business," which was closed.

Officers convinced Defendant to return to the scene, where she was questioned. Defendant told officers that "she was not sure what had happened but that she knew that she had hit something and was afraid she had hurt someone." The BMW's airbags had deployed, and Defendant bore scrapes and cuts to her legs and arms "possibly from walking through the fields." Defendant said that she did not report the accident because she panicked. Although Defendant "was visibly upset and had been crying," officers "did not detect any odor of alcohol or any form of impairment." Officers found no alcohol, drug paraphernalia, or other items "to indicate drug or alcohol use" inside the BMW. Defendant denied drinking alcohol or using drugs before driving but, nevertheless, refused to perform field sobriety tests or to provide a sample of her blood for chemical testing. Defendant was transported to the hospital for evaluation.

Further investigation revealed that the victim, who was sixty-four years old, was not wearing a helmet and had a suspended driver's license. Data collected from the BMW indicated that Defendant was traveling at "approximately 102 miles per hour at the time of the crash." The State provided that, other than Defendant's excessive speed, no other evidence or witness existed to explain how the crash occurred and that those circumstances,

2

along with the absence of evidence suggesting Defendant was impaired, led to the plea agreement in this case.

Bryant Carbbins, the victim's son, provided a victim impact statement and expressed extreme dissatisfaction with the resolution of the case, noting that the family "couldn't even have an open casket" because the victim's "body was in pieces."

Venolia Thomas, the victim's sister, similarly expressed dissatisfaction with the agreement, stating that she believed Defendant was granted leniency because she worked for the Sheriff's Office. Ms. Thomas said that the victim's loss had been devastating, as had the fact that Defendant had been "liv[ing] her life for the last two years" while the victim's family was "still suffering." Ms. Thomas said that Defendant had no "remorse at all." Ms. Thomas said that it was her belief that Defendant had been drinking before she struck and killed the victim, noting that, in the hours after the accident, Defendant deleted her social media presence, which purportedly included indications on her Facebook page that she had, in fact, been drinking. Ms. Thomas asked the court to deny diversion and said that Defendant "deserves some jail time" because "sorry is not good enough for me."

## II. Sentencing Hearing

The State asked that the trial court deny diversion based on the circumstances of the offense, including that Defendant was traveling more than 100 miles per hour when she struck the victim, that she failed to report the accident, and that she fled the scene of what she should have known was a fatal injury to the victim. The State argued that Defendant displayed "callous indifference to the fate of" the victim. The State also argued that the court should consider the deterrence value to both Defendant and others by reminding "the citizens of Knox County" that they are responsible for the safety of themselves and others when they take to the roads. Finally, the State argued that judicial diversion would not serve the ends of justice or the interest of the public given that the victim lost his life because of Defendant's reckless behavior. The State noted that Defendant had already been granted leniency by the terms of the plea agreement, which allowed her to plead guilty to a lesser offense with a one-year term of probation and insisted that granting "diversion is a step too far for the circumstances of this case."

Defendant asked the trial court to grant judicial diversion, citing the fact that she was not intoxicated but "was in a hurry" and "unfortunately made an imprudent decision." Defendant also noted that she had no criminal history, that she was employed, and that she was a mother. Defendant argued that her physical and mental health supported a grant of diversion. Defendant argued that granting diversion would serve the interests of the public and Defendant. Defense counsel then read into the record a statement by Defendant:

I sincerely regret my imprudent actions on the morning of September 4, 2021. I was in a hurry to get home, and I recognize my haste was directly

3

related to the loss of Mr. Woods' life. I've replayed the circumstances of the night many times in my . . . head and fully recognize the bad decisions that placed me before this Court.

I make no excuses and take full responsibility for my actions. I obviously never knew Mr. Woods, but I believe all life is precious and valuable. My sincere sympathies and regrets go out to Mr. Woods' family.

I wish I could undo my actions, but no such ability exists. I hope this Court will recognize the sincerity of my remorse and give me the opportunity to earn a diversion through positive action in my community so that I can serve as an example to others of the dangers of speeding and inattention on the roadway.

Defendant asked the trial court to consider that she had completed the "Significant Driver Improvement program with AAA" and "MADD VIP" and had spent time volunteering with Second Harvest Food Bank. She also asked the court to consider the many letters in support of granting her diversion.

### III. Trial Court's Findings

The trial court concluded that Defendant's lack of criminal history and "proactive steps in this case" suggested that she was amenable to correction, which weighed in favor of granting judicial diversion. The trial court found that Defendant's social history, mental health, and physical health were all good, which also weighed in favor of granting diversion. The court observed, however, that it was required to "look at the whole picture" and noted that Defendant's was "the third case in just a few months that this [c]ourt has had to deal with where somebody driving a four to six-thousand-pound motor vehicle hit a motorcycle from behind and killed the driver." The court stated that it had sentenced the other two defendants to jail time but distinguished those cases because the drivers in those cases either had prior records or admitted drinking and driving. Nevertheless, the court stated that it could not "get around" the fact that Defendant was traveling more than 100 miles an hour on a well-lit portion of the highway when she "ran up over the back of a motorcycle," noting that "it would be criminally negligent homicide" if Defendant had been "doing 75" and killed the victim. The court stated, "[W]hen I look at the circumstances of this offense, as well as the need to deter others, given what we all know and all can agree is a very heavily traveled section of highway in this county, I just can't in good consci[ence] put you on diversion." The trial court denied judicial diversion based "upon the circumstances of the offense as well as factor seven, the interest of the public as well as the defendant," and ordered Defendant to serve her one-year sentence on probation.

Following the denial of judicial diversion, Defendant filed a timely notice of appeal to this court.

4

**Analysis**

On appeal, Defendant challenges the denial of judicial diversion, arguing that the trial court's decision is not entitled to a presumption of reasonableness and that the court erred by denying diversion. The State contends that the trial court did not abuse its discretion by denying diversion.

Following a determination of guilt by a plea of guilty or nolo contendere or by trial, a trial court may, in its discretion, defer further proceedings and place a qualified defendant on probation without entering a judgment of guilt, a practice commonly referred to as "judicial diversion." *See* Tenn. Code Ann. § 40-35-313(a)(1)(A); *State v. Dycus*, 456 S.W.3d 918, 925 (Tenn. 2015). Upon the "successful completion of the probationary period under judicial diversion, 'the court shall discharge the person and dismiss the proceedings against the person.'" *Dycus*, 456 S.W.3d at 925 (quoting Tenn. Code Ann. § 40-35-313(a)(2)). Following such dismissal, the defendant may seek expunction of the defendant's criminal record. *Id.* (first citing Tenn. Code Ann. § 40-35-313(a)(1)(A); and then *State v. Schindler*, 986 S.W.2d 209, 211 (Tenn. 1999)). As such, "judicial diversion is not a sentence; rather, the grant or denial of judicial diversion is simply a decision to defer a sentence or to impose one." *State v. Sheets*, No. M2022-00538-CCA-R3-CD, 2023 WL 2908652, at *6 (Tenn. Crim. App. Apr. 12, 2023) (citing *State v. King*, 432 S.W. 3d 316, 323 (Tenn. 2014)). "Our supreme court has described judicial diversion as a 'legislative largess' available to a qualified defendant." *Id*. (citing *King*, 432 S.W.3d at 323).

To qualify for diversion, a defendant must be found guilty of, or plead guilty or nolo contendere to, an offense that is not "a sexual offense or a Class A or Class B felony" and not have a prior conviction for a felony or Class A misdemeanor. Tenn. Code Ann. § 40-35-313(a)(1)(B)(i)(c), (d). As the trial court acknowledged, Defendant was qualified for judicial diversion. Yet being eligible for judicial diversion does not equal entitlement to diversion as a matter of law. *See State v. Bonestel*, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9 (Tenn. 2000).

When determining whether to grant diversion, the trial court must consider: (1) the accused's amenability to correction, (2) the circumstances of the offense, (3) the accused's criminal record, (4) the accused's social history, (5) the accused's physical and mental health, (6) the deterrence value to the accused as well as others, and (7) whether judicial diversion will serve the interests of the public as well as the accused. *State v. Electroplating*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998) (first citing *State v. Parker*, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996); and then *Bonestel*, 871 S.W.2d at 168). The trial court "must weigh the factors against each other and place an explanation of its ruling on the record." *King*, 432 S.W.3d at 326 (citing *Electroplating*, 990 S.W.2d at 229). The

5

trial court need not specifically recite all the *Parker* and *Electroplating* factors to be granted the presumption of reasonableness, but "the record should reflect that the trial court considered the *Parker* and *Electroplating* factors in rendering its decision and that it identified the specific factors applicable to the case before it. Thereafter, the trial court may proceed to solely address the relevant factors." *Id.*

If the trial court follows these mandates, "the appellate court must apply a presumption of reasonableness and uphold the grant or denial so long as there is any substantial evidence to support the trial court's decision." *Id.* at 327 (footnote omitted). "If, however, the trial court fails to consider and weigh the applicable common law factors[,] . . . the appellate courts may either conduct a de novo review or, if more appropriate under the circumstances, remand the issue for reconsideration." *Id.* at 327-28. Such a decision "is within the discretion of the reviewing court." *Id.* at 328.

## *A. Standard of Review*

The record demonstrates that the trial court considered and weighed the *Parker* and *Electroplating* factors in favor of and against granting diversion before making its decision and fully articulated its reasons for denying diversion. Although the court did not spend much time discussing the factors favoring the grant of diversion, the court agreed that Defendant's criminal record, social history, and her physical and mental health all weighed in favor of granting diversion. *See Electroplating*, 990 S.W.2d at 229 (citations omitted). The trial court also determined that Defendant was amenable to correction. *See id.*

Ultimately, however, the trial court determined that the circumstances of the offense and the need to deter reckless driving in the community, which, the court noted, had seen three car-versus-motorcycle accidents in quick succession, warranted the denial of diversion. *See id.* The court concluded that the grant of diversion would not serve the needs of Defendant or of the community. *See id.* Because the trial court considered and weighed the appropriate factors, we will apply a presumption of reasonableness to the trial court's sentencing decision. *King*, 432 S.W.3d at 327.

## *B. Review for Abuse of Discretion*

Following our review, we conclude that nothing in the record overcomes the presumption of reasonableness afforded the trial court's decision and that substantial evidence supports the denial of judicial diversion in this case. As the trial court acknowledged, Defendant's lack of criminal record, mental and physical health, and amenability to correction all favored the granting judicial diversion. *See Parker*, 932 S.W.2d at 958.

The trial court concluded, however, that the circumstances of the offense weighed heavily against the grant of diversion. Defendant was traveling in excess of 100 miles per

6

hour on a well-lit stretch of a very busy interstate when she "ran up over the back of" Mr. Woods' motorcycle, wedging it against the median and leaving him dead on the highway. Instead of attempting to render aid or summoning help, Defendant fled the scene on foot and did not return until she was coaxed to do so by members of her family and the Sheriff's Office. Once on the scene, Defendant denied drinking or doing drugs but refused testing to determine whether she was impaired. These actions "significantly exceeded" those required to satisfy the elements of the offense of criminally negligent homicide. *Cf. State v. Lacy*, No. W2016-00837-CCA-R3-CD, 2017 WL 1969764, at *6 (Tenn. Crim. App. May 12, 2017) (holding that denial of diversion based upon the circumstances of the offense was inappropriate when no evidence suggested "that the defendant's actions significantly exceeded those required to satisfy the elements of the offense"); *cf. State v. Gobble*, No. E2014-01596-CCA-R3-CD, 2015 WL 12978645, at *10 (Tenn. Crim. App. Aug. 12, 2015) (holding that trial court erred by focusing on the loss of life and the defendant's leaving the scene of a motor vehicle accident she caused when those "facts are already incorporated into the elements of the offense" for which she was convicted).

Moreover, as the State noted and the trial court alluded to, Defendant was already afforded considerable leniency via the terms of the plea agreement. Had she been convicted at trial of the offenses charged in the indictment, Defendant could have been sentenced to as much as eight years' incarceration. As this court has explained, the terms of the plea agreement "color[] the nature and circumstances of the *conviction offense*." *State v. Rutherford*, No. M2016-00014-CCA-R3-CD, 2016 WL 7212573, at *5 (Tenn. Crim. App. Dec. 13, 2016) (quoting *State v. Fields*, No. M2014-01691-CCA-R3-CD, 2015 WL 4072503, at *6 (Tenn. Crim. App. July 6, 2015)) (emphasis in *Fields*); *see also State v. McIntosh*, No. E2022-00715-CCA-R3-CD, 2023 WL 3676889, at *6 (Tenn. Crim. App. May 26, 2023), *perm. app. denied* (Tenn. Oct. 13, 2023); *State v. Tollison*, No. M2016-00593-CCA-R3-CD, 2017 WL 781734, at *3 (Tenn. Crim. App. Feb. 28, 2017). This court has repeatedly "recognized that leniency in the selection of a conviction offense may support the imposition of a formidable sentence." *Fields*, 2015 WL 4072503, at *6; *see also State v. Willoughby*, No. E2023-01499-CCA-R3-CD, 2025 WL 1202079, at *6 (Tenn. Crim. App. Apr. 25, 2025), *no perm. app. filed*; *Tollison*, 2017 WL 781734, at *3; *State v. Bowman*, No. E2011-01906-CCA-R3-CD, 2012 WL 3264481 (Tenn. Crim. App. Aug. 13, 2012); *State v. Coffey*, No. E2008-00087-CCA-R3-CD, 2009 WL 400642 (Tenn. Crim. App. Feb. 18, 2009). The sentence imposed in this case, one year of probation, could hardly be categorized as "formidable." Consequently, the record supports the trial court's conclusion that the circumstances of the conviction offense weighed against the grant of judicial diversion.

The trial court also found that the grant of diversion was not appropriate given that Defendant's was the third case in which the court had been called upon to impose a sentence for a car-versus-motorcycle related death. Defendant argues that the trial court unfairly utilized information from the two unrelated cases and improperly penalized her simply because she was the third person to kill a motorcyclist while driving recklessly. To the

contrary, a fair reading of the record indicates that the trial court referred to the two other cases when discussing the need for deterrence and that the trial court carefully distinguished the actions and characteristics of the defendants in those cases from those of Defendant. This was an appropriate consideration of both specific and general deterrence, and the court concluded that Defendant's conviction would act as a deterrent to others and serve the interests of the public. Defendant argues that the trial court improperly "conflated" general deterrence with the interests of the public, but we observe that the two concepts are related. If a need exists for general deterrence, then it would not serve the interests of the public to grant diversion. This court has concluded that granting diversion may favor the interests of the defendant when necessary to avoid the stigma of a felony conviction and its implications on future employment. *See Sheets*, 2023 WL 2908652, at *12 (collecting cases). However, the grant of diversion does not serve the interests of the public or the defendant when it depreciates the seriousness of the offense or where the collateral consequences of a conviction would protect the public. *See id.* (collecting cases). The record supports the trial court's findings that the denial of diversion would serve as a general deterrent and, consequently, best served the interests of the public. By finding that a sentence of probation was appropriate, the trial court recognized that, in this case, "the need for incapacitation was not evident from a long history of criminal conduct and that rehabilitation was reasonably feasible." *Willoughby*, 2025 WL 1202079, at *10.[1] The court's decision also reflects "that the fact of a felony conviction accounted for both deterrence and the need to avoid depreciating the seriousness of the offense." *Id.*

## Conclusion

Because the trial court properly considered the *Parker* and *Electroplating* factors in its decision to deny diversion and substantial evidence supports its decision, the trial court did not abuse its discretion. Its decision is presumed reasonable, and we will not second-guess its determination. Accordingly, we affirm the judgment of the trial court.

s/ Matthew J. Wilson
MATTHEW J. WILSON, JUDGE

---

[1] The trial court observed that, should Defendant successfully complete probation, under the current version of Code section 40-32-107, she could petition for expunction of her conviction after the passage of five years. *See* Tenn. Code Ann. § 40-32-107(a)(3) (providing that a person convicted of a Class E felony that is otherwise ineligible for expunction may petition for expunction five years after successful completion of the terms of the sentence imposed).